Columbia, November, 1873.

HEARD NOVEMBER TERM, 1873.

## STOLBRAND vs. HOGE.

An action does not lie by the Superintendent of the Penitentiary to recover, in his own right, as upon a contract implied by law, for articles manufactured at the Penitentiary by the labor of convicts, and delivered to defendant, and it makes no difference that the articles, in their crude state, were the private property of the Superintendent, and that he had settled with the institution for hire of the convicts whose labor he had used.

BEFORE CARPENTER, J., AT COLUMBIA, OCTOBER TERM, 1873.

This was an action for the price and value of certain articles of manufactured marble sold and delivered by the plaintiff to the defendant.

The case was this: The plaintiff had been Superintendent of the Penitentiary, but had ceased to be so before the action was commenced. During the time he was Superintendent the articles in question were manufactured at the Penitentiary upon the order of defendant, and delivered to him. The labor of convicts were used in making them. Evidence was given on behalf of plaintiff tending to show that he was the owner of the crude marble out of which the articles were made; that it had been purchased by him from agents of the State who had sold it under a concurrent resolution of the General Assembly, authorizing them to do so; that the labor of convicts had been used with the consent of the Directors of the Penitentiary; that the plaintiff had charged himself, in his account with the institution, with the hire, and that his account had been settled with the Board of Directors. The value of the articles, but no express contract to pay for them, was proved.

The plaintiff having closed his case, the defendant moved the Court to dismiss the complaint, on the ground that the plaintiff had not shown such a property in the articles as entitled him to maintain the action. His Honor overruled the motion and submitted the case to the jury, who found for the plaintiff.

The defendant appealed.

*Melton & Chamberlain*, for appellant.

*Melton & Clark*, contra.

April 8, 1874. The opinion of the Court was delivered by

WILLARD, A. J. The ground of appeal is the refusal of the Court to dismiss the complaint for want of proof.

The complaint alleges the sale and delivery of certain goods by the plaintiff to the defendant. There is no proof of an express contract with plaintiff personally. It is not disputed that goods, consisting of manufactured marble, were ordered by the defendant of the plaintiff, who was at the time Superintendent of the Penitentiary, but ceased to be such before the commencement of this suit; that the work was performed at the Penitentiary by the labor of convicts confined in that institution under the supervision of the plaintiff; and that the goods were delivered to and accepted by the defendant. A mixed question of law and fact is presented, whether the marble manufactured was the property of the State or of the plaintiff.

The question is, whether upon this state of facts the jury were entitled to find a verdict for the plaintiff. If not, the motion to dismiss the complaint should have been allowed.

Had it appeared that the plaintiff was, at the time the goods were ordered, acting lawfully in his own behalf in the business to which the order related, the law would presume from the facts a contract of sale between the plaintiff and defendant, and the defendant would be excluded, while enjoying the property, from controverting the title of the plaintiff.

Does the fact that the plaintiff was Superintendent of the Penitentiary that furnished the labor, and was known to the defendant as such, give rise to a legal presumption, in the absence of proof to the contrary, that it was in that official character that the defendant treated with him?

The Superintendent of the Penitentiary is a public officer, possessing large powers over a class of persons committed to his care. His powers and duties are prescribed by law, and all persons dealing with him in regard to matters appertaining to his office are presumed to act in view of his legal powers and duties in the premises. Chapter 145 of the General Statutes prescribes his powers and duties. It is made his duty to confine, employ and govern all offenders committed to his charge, according to their convictions, whether to solitary confinement or hard labor. He is required to purchase all the provisions and materials, and all other articles necessary for supporting and employing the prisoners, and for effecting the objects of the institution; to make necessary repairs to the prison, and superintend their construction; to make sale of such articles produced in or belonging to the institution as

are proper to be sold ; to take the charge and custody of the buildings, furniture, tools, implements, stock and provisions, and every species of property belonging to the State.

These provisions cover all that is requisite to enable the Superintendent of the Penitentiary to apply the labor of convicts sentenced to hand labor to useful work for the benefit of the State, to aid in liquidating the cost of maintaining the institution. He can apply moneys subject to the general uses of the prison to the purchase of tools, implements, and stock or materials, and can use the labor of the convicts for the manufacture of saleable wares. He can sell and dispose of such wares. It is also provided that the Superintendent for the time being may maintain suits at law, among other purposes, to recover any debt or demand accruing from the business transactions at the Penitentiary.

It is clearly his duty to employ the labor of the convicts for the benefit of the State. There is no authority of law for him to become the purchaser of the labor of the convicts for his own use and benefit, and to carry on business by the use of such labor on his own account, nor could the sanction of the regents of the institution confer any such right or legalize such conduct. Such authority cannot be implied in the absence of distinct legislative sanction, for it is wholly inconsistent with the nature of his duties that he should unite in himself the characters of an official custodian of convicts, and of their taskmaster for his private profit and emolument. Such a relation is not only inconsistent with the interests of the State, but violates the dictates of humanity that require that those who are the instruments of inflicting the hardships imposed by the law on the violators of its provisions shall be free from direct temptations to abuse their trust.

The defendant, in ordering the goods in question, must be deemed to have dealt with the plaintiff in view of his official character and duty, and the result would be that a contract would arise between the State and the defendant, in which the plaintiff would stand as the agent of the State.

It is not important to consider whether the plaintiff was or was not the owner of the marble out of which the goods in question were manufactured.

If the plaintiff used his private property in the course of a contract between the State and the defendant he may have a claim against the State, but that fact cannot change the character of the contract itself.

It is a serious question whether the plaintiff acquired any rights to the marble against the State. He claims to have purchased it from a person having no other authority to dispose of it than what could be conferred by a concurrent resolution of the General Assembly. A concurrent resolution is understood to be one which is passed without the customary readings in the respective houses, which, by the Constitution, (Art. 2, Sec. 21,) are requisite, in order to give to the action of the Legislature the force of law. Such a resolution could not confer authority to transfer the title of the State in personal property..

The judgment should be set aside and a new trial granted.

*Wright,* A. J., concurred.

*Moses,* C. J., dissented.